**PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 19-3797
_____

QUINTEZ TALLEY,
                                        Appellant

v.

MAJOR CLARK; LAURA BANTA; M. NASH; THOMAS
GRENEVICH; GEORGE ANDRAKA; SGT. WORTH; SGT.
BISSELL; C/O BANGGERT; C/O MARTIN; C/O HAYES;
C/O MARTINEZ; C/O VOURHEES; C/O BROWN; SGT
RIVERA; C/O WEST; C/O CHOI; UNKNOWN
CORRECTIONS OFFICERS; PA. DEPARTMENT OF
CORRECTIONS; DR. RICHARD DOYLE; R. LADDNNE;
MHM; CHIEF SAFETY & ENVIRONMENTAL
PROTECTION DIVISION; J. WETZEL
_____

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. No. 2-19-cv-00253)
District Judge: Honorable Timothy J. Savage
_____

Argued on June 4, 2024

Before: HARDIMAN, PORTER, and AMBRO, *Circuit Judges*.

(Filed: August 1, 2024)

Quintez Talley
Camp Hill SCI
P.O. Box 8837
2500 Lisburn Road
Camp Hill, PA 17001

*Pro Se Appellant*

Craig Castiglia
Vernon L. Francis
Deckert
2929 Arch St.
18th Floor, Cira Centre
Philadelphia, PA 19104

Zhixin Han [Argued]
University of Pennsylvania School of Law
3400 Chestnut Steet
Philadelphia, PA 19104

*Counsel for Court-Appointed Amici Curiae in Support of Appellant*

Michelle A. Henry
Claudia M. Tesoro [Argued]
J. Bart DeLone
Office of the Attorney General of Pennsylvania
1600 Arch Street, Suite 300

Philadelphia, PA 19103

*Counsel for Appellees Major Clark, Laura Banta, M. Nash, Thomas Grenevich, George Ondrejka, Sgt. Worth, Sgt. Bissell, C/O Barreto, C/O Bangert, C/O Martin, C/O Hayes, C/O Martinez, C/O Voorhees, C/O Brown, Sgt. Haines, Sgt. Rivera, C/O West, C/O Choi, Pa. Department of Corrections, R. Ladonne, J. Wetzel*

Cassidy L. Neal [Argued]
Frank X. Petrini, III
Baum O'Connor Cullen Chmiel
912 Fort Duquesne Boulevard
Pittsburgh, PA 15222

*Counsel for Appellee Dr. Richard Doyle*

_____

OPINION OF THE COURT
_____

HARDIMAN, *Circuit Judge*.

Quintez Talley, a Pennsylvania inmate, appeals the District Court's order dismissing his federal civil rights claims for failure to exhaust administrative remedies as required by the Prison Litigation Reform Act (PLRA). Talley alleged he was unable to exhaust because he lacked access to grievance forms and writing implements while he was held in restrictive custody. The District Court held that Talley should have requested permission to file a late grievance under the state

prison system's written policy. Because Talley's failure to do so rendered his federal claims unexhausted, we will affirm.[1]

I

Talley suffers from mental illness and has been incarcerated in Pennsylvania prisons for over a decade. His suit focuses on actions allegedly taken against him from about January 4 to January 8, 2018, while he was imprisoned at the Pennsylvania State Correctional Institution at Graterford.

On January 6, 2018, while confined in the restricted housing unit at SCI-Graterford, Talley attempted to commit suicide by setting fire to his cell. After receiving medical attention, Talley was placed on suicide watch and confined in a psychiatric observation cell from January 6, 2018 through February 8, 2018, first at SCI Graterford and then after being transferred to SCI Fayette. During this time, Talley had no access to the grievance forms or writing implements needed to file a grievance. At some point on February 9, 2018, Talley regained access to the materials needed to file a grievance but did not do so. Instead he filed this pro se action in federal court under 42 U.S.C. § 1983, alleging a congeries of claims against numerous defendants and seeking leave to proceed *in forma pauperis*.

---

[1] The Court thanks Vernon L. Francis, Esq. and Craig J. Castiglia, Esq. for their service in this appeal as Court-appointed pro bono amici curiae on behalf of Appellant. We also thank Zhixin Han, a recent graduate of the University of Pennsylvania Carey Law School admitted under Third Circuit Local Appellate Rule 46.3, for her service.

4

Pursuant to its screening obligation under 28 U.S.C. § 1915A, the District Court dismissed with prejudice some of Talley's federal claims against the Pennsylvania Department of Corrections (DOC) and individual defendants. It then granted Talley's motion to proceed *in forma pauperis* and ordered Talley to provide waiver of service and summons forms for each defendant.

Counsel for the Commonwealth filed waiver of service forms and entered appearances on behalf of all but three defendants: Robert McSurdy, then Chief of the Safety and Environmental Protection Division, private mental health contractor MHM, and Dr. Richard Doyle. On September 3, 2019, Commonwealth counsel filed a motion to dismiss on behalf of the then-appearing DOC Defendants, who waived service. Talley did not oppose the motion to dismiss. Instead, he moved for a default judgment against the appearing DOC defendants, which the District Court denied. After Talley served the additional DOC defendant, McSurdy, Commonwealth Counsel appeared on his behalf and filed a motion to dismiss joining in the earlier unopposed motion to dismiss. Talley yet again chose not to file any opposition.

On November 20, 2019, the District Court dismissed Talley's complaint as to all Defendants. The District Court first observed that, by local rule, it could have granted the motions to dismiss because Talley failed to oppose them. *Talley v. Clark*, 2019 WL 6218265, at *1 n.5 (E.D. Pa. Nov. 20, 2019). The Court then held that Talley's failure to exhaust administrative remedies as required by the PLRA barred his federal claims. *Id.* at *4. It included the non-moving defendants in its dismissal order because "the claims against *all defendants* [were] 'integrally related' [and] . . . the non-moving defendants [were] in a similar position to the moving defendants." *Id.* at

5

*1 n.4 (emphasis added) (quoting *Bonny v. Soc'y of Lloyd's*, 3 F.3d 156, 162 (7th Cir. 1993)). *See also Silverton v. Dep't of Treasury*, 644 F.2d 1341, 1345 (9th Cir. 1981) (dismissing action against party not yet appearing on basis that the defendant was in same position as moving defendant); *accord Rosser v. Chrysler Corp.*, 864 F.2d 1299, 1304 (7th Cir. 1988) (observing "substantial merit in [this] practice followed in other circuits" and adopting it). After determining it would dismiss the federal claims with prejudice, the District Court declined to exercise supplemental jurisdiction over the state law claims and dismissed them as well. *Talley*, 2019 WL 6218265, at *5.

Talley appealed the District Court's order on November 27, 2019, and Dr. Doyle was later served with a summons and the Complaint. Service apparently was never made on MHM.

II

The District Court had jurisdiction over this federal civil rights action and related state law claims under 28 U.S.C. §§ 1331 and 1367(a). We have jurisdiction under 28 U.S.C. § 1291.

We review de novo the District Court's order dismissing the federal claims for failure to exhaust under the PLRA, *Spruill v. Gillis*, 372 F.3d 218, 226 (3d Cir. 2004), and we may affirm for any basis evident in the record, *see Shark River Cleanup Coal. v. Twp. of Wall*, 47 F.4th 126, 136 (3d Cir. 2022). We review for abuse of discretion the District Court's decision to decline supplemental jurisdiction over the state law claims once the federal claims had been dismissed. *Hedges v. Musco*, 204 F.3d 109, 123–24 (3d Cir. 2000).

III

Talley challenges the order dismissing his complaint on both procedural[2] and substantive grounds. He first argues that dismissal was improper under Rule 12(b)(6) of the Federal Rules of Civil Procedure because exhaustion is an affirmative defense. Second, he contends his complaint against Dr. Doyle and MHM should not have been dismissed because they never appeared or moved to dismiss. Finally, Talley maintains that he had no need to exhaust because administrative remedies were not available to him from January 6, 2018 through February 8, 2018, and that he regained access to grievance forms and writing implements only on February 9, 2018, after the time to file a grievance had expired.

A

The PLRA, 42 U.S.C. § 1997e(a), provides: "No action shall be brought with respect to prison conditions under

---

[2] Talley also challenges the District Court's October 3, 2019 order denying his motion for default judgment. He argues that he was entitled to a default judgment against the Defendants who waived service and filed the first motion to dismiss. We disagree for several reasons. Those Defendants had responded to the Complaint prior to Talley's request for a default judgment, there was no Clerk's entry of default under Rule 55(a) of the Federal Rules of Civil Procedure, and they had viable defenses. Thus, the District Court did not err in refusing to enter a default judgment in favor of Talley. *See Chamberlain v. Giampapa*, 210 F.3d 154, 164 (3d Cir. 2000) (applying abuse of discretion standard); *United States v. $55,518.05 in U.S. Currency*, 728 F.2d 192, 194 (3d Cir. 1984) (default judgments are disfavored).

section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." The exhaustion mandate is a "centerpiece" of the statute, *see Woodford v. Ngo*, 548 U.S. 81, 84 (2006), that serves three important statutory goals: "(1) to return control of the inmate grievance process to prison administrators; (2) to encourage development of an administrative record, and perhaps settlements, within the inmate grievance process; and (3) to reduce the burden on the federal courts by erecting barriers to frivolous prisoner lawsuits," *Spruill*, 372 F.3d at 230. The PLRA requires "proper exhaustion," *Woodford*, 548 U.S. at 93, which means "complet[ing] the administrative review process in accordance with the applicable procedural rules," *Downey v. Pa. Dep't of Corr.*, 968 F.3d 299, 305 (3d Cir. 2020) (quoting *Woodford*, 548 U.S. at 88). The only limit on § 1997e(a)'s mandate is that "administrative remedies must be available to the prisoner" as both a formal and practical matter. *Id.* (citing *Ross v. Blake*, 578 U.S. 632, 641–42 (2016)).

The phrase "with respect to prison conditions" in § 1997e(a) encompasses a wide range of conditions and actions to which a prisoner is subjected. It covers challenges to everything from generally applicable prison policies to single incidents of mistreatment, including "excessive force or some other wrong" committed against the plaintiff-prisoner alone. *Porter v. Nussle*, 534 U.S. 516, 532 (2002). All of Talley's federal claims challenge his prison conditions, so he was required to properly exhaust them through the prison's grievance process.

8

To exhaust under the PLRA, a prisoner must complete the administrative review process in accordance with the prison's grievance policies. *Downey*, 968 F.3d at 305. So we consider what the prison's procedures required. *Id.* at 306; *see Shifflet v. Korszniak*, 934 F.3d 356, 364–65 (3d Cir. 2019). The Pennsylvania DOC has an "Inmate Grievance System" by which prisoners can "seek resolution of problems or other issues of concern arising during the course of confinement." DC-ADM 804 (policy 804).[3] Policy 804's "general grievance procedures" are meant to handle a wide variety of grievances. *Downey*, 968 F.3d at 306.

Policy 804 § 1.A.5 and 1.A.8 instruct that "the inmate must submit his[] grievance to the Facility Grievance Coordinator/designee using the DC-804, Part 1 [form] . . . within 15 working days after the event upon which the claim is based." *Id.* (emphasis removed). Critical to this appeal, as to the stated "15 working days" deadline, policy 804 § 1.C.2 provides:

> A time extension for filing a grievance will be considered on a case-by-case basis. The inmate must notify the Facility Grievance Coordinator/designee of the reason for the delay. The Facility Grievance Coordinator/designee will consider the reason given and also consider if the delay was caused by: . . .

---

[3] Pennsylvania DOC policies effective as of May 1, 2015 are available at https://perma.cc/YE6X-SJV5.

e. any other reason the Facility Grievance Coordinator/designee deems appropriate.

**NOTE:** If it is determined that a delay was caused by a circumstance listed above, a reasonable extension of time for filing shall be permitted.

If the inmate pursuing a grievance receives an unfavorable decision, policy 804 § 2 provides two levels of appeals that an inmate must pursue to complete the grievance process.

Talley averred that because he had no access to grievance forms or writing implements in the psychiatric observation cell, he had no duty to exhaust administrative remedies under policy 804. But in view of policy 804 § 1.C.2, we appointed Amici Curiae and asked them to brief the following issue: "For purposes of administrative exhaustion, must a prisoner in the Pennsylvania state prison system who had been impeded from filing a grievance seek an extension of time to file such a grievance once the impediment is gone?" ECF No. 98. Amici were constrained to conclude that he must. *See* Amici Br. 5–7. And the District Court so ruled. *Talley*, 2019 WL 6218265, at *4. We agree.[4]

---

[4] At least one of our sister courts has weighed in on grievance extensions and likewise concluded that if an extension request is an available remedy, an inmate must pursue it to exhaust. In *Harper v. Jenkins*, 179 F.3d 1311, 1312 (11th Cir. 1999) (per curiam), the Eleventh Circuit explained that the state prison grievance process in Georgia had a procedure allowing prisoners, on a showing of good cause, to seek a waiver of the

10

Requiring Pennsylvania prisoners to seek an extension to file a grievance pursuant to policy 804 § 1.C.2 serves the important goals of exhaustion. Crucially, § 1.C.2 is no less an administrative remedy than the grievance itself, the other filing requirements in § 1 with which prisoners must comply, and the appeals process they must pursue under § 2. Because a request to extend or be excused from the 15-day deadline for filing a grievance is explicitly included as part of the Pennsylvania DOC's grievance procedures, a prisoner must request permission to file an untimely grievance under § 1.C.2 just as he must pursue the grievance itself. To hold otherwise would render § 1.C.2 of no value in derogation of the PLRA's exhaustion requirement.

In his pro se brief, Talley points to a panel opinion of this Court, *West v. Emig*, 787 F. App'x 812, 813 (3d Cir. 2019). According to Talley, his failure to file a grievance is excused because he did not have access to a pen. We disagree.

It is true that administrative remedies were temporarily "unavailable" while Talley was on suicide watch without access to writing materials, but that does not excuse his failure to request an extension once he was released and able to complete the necessary forms. Talley's reliance on *West* is unpersuasive. At issue in that case was Delaware's "*unofficial* verbal grievance policy" regarding extensions of time to file grievances. 787 F. App'x at 816 (emphasis added). Here, the

---

time period to file a grievance. Because the prisoner failed to seek the waiver for his untimely filing, the court concluded he failed to exhaust. *Id.*

11

Pennsylvania DOC has a formal written policy for extensions to which Talley had recourse.[5]

C

We agree with Talley that exhaustion of prison administrative remedies is an affirmative defense, which of course applies with equal force to Pennsylvania's request-for-extension procedure. The Supreme Court has explained that the ordinary pleading rule—that a plaintiff need not plead the absence of an affirmative defense or otherwise plead around it—applies in the PLRA context. *Jones v. Bock*, 549 U.S. 199, 216 (2007). Nevertheless, "[w]hether a particular ground for opposing a claim may be the basis for dismissal for failure to state a claim depends on whether the allegations in the complaint suffice to establish that ground." *Id.* at 215. Accordingly, where a prisoner's failure to exhaust under the PLRA is "apparent from the face of the complaint," a district court may dismiss it on that basis. *Ray v. Kertes*, 285 F.3d 287, 297 (3d Cir. 2002).

Though not required, Talley's complaint contains a section he labeled "Exhaustion of Administrative Remedies." Amicus Supp App. 14 (capitalization omitted). In it, he contends that due to his confinement in a psychiatric observation cell after attempting suicide on January 6, 2018, he lacked access to grievance forms and writing utensils, and "he didn't get approved to possess either paper/grievance(s) and/or a writing utensil until February 9th, 2018." *Id.* Talley explains further that he did not file a grievance because his "[p]sychiatric commitments made these remedies

---

[5] *See, e.g.*, *Ross*, 578 U.S. at 643 (discussing the availability of grievance procedures that are "officially on the books").

12

'**Un**available' (within the fifteen (15) working days timeframe to address them." *Id.* (emphasis in original). Taking Talley's assertions at face value, Defendants' exhaustion defense is manifest in Talley's complaint.

Amici acknowledge that an extension for filing a grievance is an administrative remedy provided by the Pennsylvania DOC grievance process. They also acknowledge that, if otherwise available, a prisoner must comply with that grievance procedure. Yet Amici nonetheless urge that we must remand for the District Court to consider whether Talley was impeded from filing his grievance on a basis other than temporary lack of forms and a pen—*i.e.*, threats to thwart him from filing a grievance. Amici explain we should do so to "contextualize[]" his pro se pleadings. Amici Br. 10.

Threats made by prison officials that "inhibit an inmate from utilizing an administrative process . . . lift the exhaustion requirement" from the administrative process. *Rinaldi v. United States*, 904 F.3d 257, 267 (3d Cir. 2018). *See also Ross*, 578 U.S. at 643–44 ("[A]n administrative remedy, although officially on the books, is not capable of use to obtain relief" if "prison administrators thwart inmates from taking advantage of [it] . . . through . . . intimidation."). Talley's complaint contains allegations of harassment, including that officials "very high in the DOC chain" and the "DOC itself" were upset that Talley had previously sued them. Compl. ¶ 24 (capitalization omitted). But as amici admit, Talley maintains the reason he did not pursue a grievance was because he believed it would be untimely due to his lack of access to forms and writing implements during the 15-day time period for filing—not because he was "thwarted" by threats, harassment, or fear of reprisal. *See* Amici Br. 9.

13

For that reason, we decline to remand for Talley to pursue amici's newly suggested reason to excuse Talley's failure to exhaust. He offered just one justification for failing to file a grievance, and he did not proffer any other explanations in response to the defendants' motions to dismiss. Under these circumstances, further proceedings on the availability of administrative remedies because of other possible exceptions to exhaustion would contravene Talley's position.

Requests to extend the 15-day deadline are part of the Pennsylvania prison administrative remedial scheme. Talley's scenario falls within policy 804 § 1.C.2.e's broad provision of an administrative avenue for relief from the grievance deadline on "any basis." Talley was thus required to pursue this remedy when the impediment no longer existed on February 9, 2018. Because Talley did not do so, he failed to exhaust as required by the PLRA. To hold otherwise would vitiate the exhaustion requirement whenever a prisoner's severe illness or placement in restrictive confinement for safety concerns temporarily precludes access to the grievance process, which is not an uncommon impediment for Talley. *See, e.g., Talley v. Constanzo*, 2022 WL 17352167, at *2 (3d Cir. Dec. 1, 2022); *Talley v. Clark*, 851 F. App'x 306, 307 (3d Cir. 2021). In sum, the PLRA requires "the inmate [to] err on the side of exhaustion," *Ross*, 578 U.S. at 644, and Talley did not do so here.

D

Talley separately challenges the District Court's order as to Dr. Doyle and MHM. Citing *Mitchell v. Horn*, 318 F.3d 523, 529 (3d Cir. 2003), Talley argues that because defendants ordinarily must plead and prove the affirmative defense of

failure to exhaust, Dr. Doyle and MHM failed to do so because they had not even been served when the District Court dismissed the case. According to Talley, we must view the District Court as having improperly raised and ruled on the matter sua sponte as to Dr. Doyle and MHM.

We disagree because Talley's case is in a different posture than *Mitchell*. Here, the failure to exhaust required by the PLRA appears in Talley's complaint. And the District Court addressed the exhaustion issue in the context of notice to Talley that he had to respond to motions against him; notice to him by service of the motions to dismiss; his choice not to oppose the motions; and the District Court's decision to dismiss all Defendants because his failure to exhaust applied identically to all Defendants. On these facts, remand as to Dr. Doyle and MHM would be an idle exercise.

Likewise, we need not address the merits of the differing bases on which the District Court dismissed some of the federal claims when it screened the complaint. Because the Court could have dismissed all of Talley's federal claims for failure to exhaust, we will affirm its initial dismissal order on this alternative basis.[6]

---

[6] A district court "may decline to exercise supplemental jurisdiction over [state] claim[s]" under 28 U.S.C. § 1367(c). As the District Court explained, however, where it dismisses the federal claims prior to trial or at the early stages of the litigation, it "*must* decline" to exercise jurisdiction over the state law claims "unless considerations of judicial economy, convenience, and fairness" justify retaining that jurisdiction. *Hedges*, 204 F.3d 109, 123 (3d Cir. 2000) (cleaned up); *see*

\*  \*  \*

Pennsylvania's written prison grievance procedure requires prisoners to request an extension of the 15-day deadline to file a grievance. Talley's lack of access to grievance forms and writing implements in time to meet the 15-day deadline did not obviate his duty to request an extension of the deadline when his access was restored. His failure to pursue an extension rendered his federal claims unexhausted under the PLRA. So we will affirm the District Court's order dismissing the complaint.

---

*Talley*, 2019 WL 6218265, at \*4. The District Court found that none of these justifications applied. *Id.* at \*5. We perceive no abuse of discretion in its decision to dismiss the state law claims on this basis.

16