BLD-218                                                    NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 25-1765
_____

JOSHUA I. PAYNE,
                                        Appellant

v.

M. GOURLEY, Deputy Superintendent of Facility Manager SCI-Camp Hill;
W. NICKLOW, Deputy Superintendent of Centralized Services SCI-Camp Hill;
L. KENDALL, Deputy Superintendent of Diagnostic and Classification SCI-Camp Hill;
D. BENNER, Major or Unit Manager at SCI-Camp Hill; R. EVANS, Major of the Guard
at SCI-Camp Hill; L. NEWSOME, CCTM SCI-Camp Hill; B. RITCHEY, Unit Manager
in the RHU/DTU SCI-Camp Hill; WIMER, Psychology Staff at SCI-Camp Hill;
E. MILLER, Unit Manager SCI-Camp Hill
_____

On Appeal from the United States District Court
for the Middle District of Pennsylvania
(D.C. Civil Action No. 1:23-cv-00532)
District Judge:  Honorable Julia K. Munley
_____

Submitted for Possible Dismissal Pursuant to 28 U.S.C. § 1915(e)(2)(B) or
Summary Action Pursuant to Third Circuit LAR 27.4 and I.O.P. 10.6
September 18, 2025

Before: SHWARTZ, MATEY, and CHUNG, <u>Circuit Judges</u>

(Opinion filed September 24, 2025)
_____

OPINION[*]
_____

_____

[*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not
constitute binding precedent.

PER CURIAM

Joshua Payne appeals *pro se* and *in forma pauperis* from the District Court's order granting summary judgment in favor of prison officials at Pennsylvania State Correctional Institution at Camp Hill. We will affirm.

I.

Payne suffers from mental health disorders that have led to violent outbursts and suicidal ideations during his incarceration. In June 2022, prison officials placed him in a diversionary treatment unit within SCI Camp Hill's restricted housing unit after he attacked corrections officers. Payne avers that a member of the prison's medical staff would meet with him at his cell door and discuss sensitive aspects of his mental health within earshot of guards and other inmates, who then used that information to torment him. He further alleges that, during a six-week stretch in the fall of 2022, a certain prison guard—whom Payne does not name as a defendant—regularly refused to serve him breakfast or lunch, reduced the number of showers he could take each week, limited his yard time, and denied him access to group sessions that ostensibly were part of his treatment regimen (collectively, "denial-of-services claims"). Payne also claimed that prison staff moved him into a urine-soaked, feces-riddled cell in mid-November and refused to clean it or to provide him with supplies to do so himself. Although he filed more than twenty grievances, he says the prison's Program Review Committee met them with indifference.

Two of Payne's many grievances are relevant here. Grievance #1004149, filed October 26, 2022, addresses the improper disclosure of his medical information. The prison's grievance coordinator denied that grievance on October 28 because Payne did not file it within 15 days of the challenged conduct and because he invoked discrete events, which had to be submitted separately per Department of Corrections policy. Payne did not appeal that decision. Grievance #1009367, filed November 30, 2022, concerns the denial of services and Payne's cell relocation. Payne asserted that these acts were done in retaliation for filing a lawsuit against the unnamed prison guard; however, the form did not mention any unsanitary conditions or need for cleaning supplies. That grievance was denied on timeliness grounds on December 5, and Payne did not appeal.

Payne returned to general population in late December 2022. He initiated this matter three months later by filing a complaint in the United States District Court for the Middle District of Pennsylvania under 42 U.S.C. § 1983, which he amended, asserting, *inter alia*, that defendants violated his Eighth and Fourteenth Amendment rights. Defendants moved for summary judgment on the ground that Payne failed to exhaust administrative remedies as required by the Prison Litigation Reform Act of 1996 ("PLRA"), 42 U.S.C. § 1997e, either because he did not appeal unfavorable resolutions of his grievances in accordance with Department policy or because he failed to raise the challenged condition or conduct in a grievance in the first place.

Payne did not dispute defendants' contention that the 21 grievances he filed did not satisfy his exhaustion obligations. Instead, he presented two previously undisclosed documents purporting to be grievances dated November 10 and November 30, 2022,

3

pertaining to the denial of services and the unsanitary cell, respectively. He also proffered two forms that he subsequently used to inquire into the status of each grievance. The precise nature of Payne's argument was unclear from his filings. In his "counter statement" of facts, Payne intimated that the prison guards to whom he handed the grievances failed to submit them on his behalf because he did not receive a "Pink Action Return Copy" confirming their submission. See ECF Doc. 42 ¶¶ 11-14. By contrast, after lamenting in his opposition brief that he "had to depend on the same officers" whose conduct he now challenges "to place[] his grievances into the proper mail/lock-box," Payne specifically asserted that his administrative remedies were unavailable because "the prison failed to process" the grievances and "failed to respond to his follow-ups." See ECF Doc. 41 at 4-5.

The District Court referred the matter to Chief United States Magistrate Judge Daryl F. Bloom, who authored a report recommending that the District Court grant defendants' motion pursuant to Talley v. Clark, 111 F.4th 255, 263 (3d Cir. 2024), in which we held that "a prisoner in the Pennsylvania State prison system who ha[s] been impeded from filing a grievance [must] seek an extension of time to file such a grievance once the impediment is gone." For purposes of resolving defendants' motion, Judge Bloom assumed administrative remedies were unavailable to Payne before his release from the restricted housing unit in late December 2022. Because Payne never sought an extension of time to file either grievance after his administrative remedies were restored, Judge Bloom concluded that he could not satisfy the PLRA's exhaustion requirements.

4

Payne filed objections to the report in which he sought to clarify that he "[wa]s not asserting that the correctional staff did not submit the[] two additional grievances," but rather that "the Facility Grievance Coordinator failed to process" them. See ECF Doc. 48 at 2. That distinction, in Payne's view, rendered his circumstances more like that of the prisoner-appellants in Robinson v. Superintendent Rockview SCI, 831 F.3d 148, 154 (3d Cir. 2016), and Shifflett v. Korszniak, 934 F.3d 356, 359 (3d Cir. 2019), whose failure to exhaust administrative remedies we excused due to the DOC-appellees' dereliction in timely adjudicating the inmates' grievances. Defendants countered that Payne had "change[d] his tune" after receiving Judge Bloom's report and that the District Court "should not sanction such gamesmanship" by entertaining his new legal theory. See ECF Doc. 49 at 4.

The District Court adopted Judge Bloom's recommendation, granted defendants' motion, and entered judgment in their favor. Although the court agreed with Judge Bloom's exhaustion analysis under Talley, it adopted that rationale only in the alternative. The primary basis for the court's disposition of Payne's mental-health-disclosure and denial-of-services claims was his failure to "respond to the motion for summary judgment with evidence demonstrating that administrative remedies were unavailable to him," without which he could not show a genuine issue of material fact on the question of exhaustion. See ECF Doc. 50 at 18-23. The court noted that Payne raised those issues in separate grievances and that the prison's grievance coordinator denied both, but that he did not appeal the coordinator's adverse decisions.

5

As for Payne's unsanitary-cell-conditions claim, the court observed that Payne filed a grievance about his relocation to the cell in question that conspicuously omitted any mention of human waste or unanswered pleas for cleaning supplies. The sole basis for that grievance, which Payne filed same day he claims he filed the "missing grievance" involving the same cell, was that he was moved in retaliation for filing a lawsuit. The court explained that Payne could have appealed the denial of that bona fide grievance "with the evidence he advances now"—*i.e.*, that he "ostensibly filed another grievance with details making the claim timely under" Department policy that either went undelivered or unaddressed—but did not, rendering the claim unexhausted. See id. at 23-24. Payne appeals.

## II.

We have jurisdiction under 28 U.S.C. § 1291. We exercise plenary review over the District Court's summary judgment ruling. See Blunt v. Lower Merion Sch. Dist., 767 F.3d 247, 265 (3d Cir. 2014). Summary judgment is proper "if the movant shows there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). A genuine dispute of material fact exists if the evidence is sufficient for a reasonable factfinder to return a verdict for the nonmoving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). We may summarily affirm if the appeal presents no substantial question. See 3d Cir. L.A.R. 27.4; 3d Cir. I.O.P. 10.6.

The PLRA "requires that prisoners seeking relief in federal court must first exhaust the administrative remedies available at the prison level." Williams v. Beard, 482 F.3d 637, 639 (3d Cir. 2007) (citing 42 U.S.C. § 1997e(a)).  Failure to do so will render a claim procedurally defaulted.  See Spruill v. Gillis, 372 F.3d 218, 230-31 (3d Cir. 2004).  In Pennsylvania, the Department of Corrections follows a three-step process for resolving grievances: initial review by a grievance officer, direct appeal to the facility manager, and an appeal to the Secretary's Office of Inmate Grievances and Appeals for final review.  See id. at 232.

The record demonstrates that Payne did not appeal the denial of the grievances he submitted based upon the alleged disclosure of his medical information (Grievance #1004149) or the denial of services (Grievance #1009367)—the latter of which also contained an allegation that he was relocated to a different cell in retaliation for suing a prison guard, but was silent on the cell's condition.  He offered no explanation for his failure to seek further review.  Thus, the District Court properly determined that he failed to exhaust his administrative remedies and granted summary judgment in appellees' favor on those claims.

On appeal, Payne highlights the missing grievances he produced in opposition to appellees' summary judgment motion.  He says that the prison failed to process those forms, even though he submitted one of them on the same day as Grievance #1009367.  One form merely reiterates the same denial-of-services claims set forth in Grievance

7

#1009367, which the grievance coordinator considered and rejected; the other contains the first mention of human waste in Payne's cell.

Unfortunately for Payne, his bare allegation that someone failed to process a newly identified grievance of questionable provenance, which he made for the first time in a brief in opposition to a motion for summary judgment, is insufficient to create a genuine issue of material fact on the question of exhaustion. "[T]o avoid summary judgment," even *pro se* litigants like Payne "still must present at least affidavits" or their equivalent setting forth critical facts. See Mala v. Crown Bay Marina, Inc., 704 F.3d 239, 249 (3d Cir. 2013) (citing Brooks v. Kyler, 204 F.3d 102, 108 n.7 (3d Cir. 2000)); see also FED. R. CIV. P. 56(c)(4). The submission need not be sworn. "[T]he matter can instead be supported by an unsworn 'declaration, certificate, verification, or statement.'" United States *ex rel.* Doe v. Heart Solution, PC, 923 F.3d 308, 315 (3d Cir. 2019) (quoting 28 U.S.C. § 1746). Whatever form the statement takes, it must be "made under penalty of perjury and dated." Id. Because Payne's unsworn allegations lack the required certification, the record before us contains no creditable evidence on which a factfinder could resolve the issue of exhaustion in his favor. See Lauria v. Lieb, --- F.4th ----, 2025 WL 2628170, at *2 (3d Cir. Sept. 12, 2025) (reaffirming Doe's holding that unsworn statements not made under penalty of perjury cannot create a factual issue on summary judgment).

Accordingly, we will affirm the judgment of the District Court.

8